UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WASTE ACTION PROJECT,

             Plaintiff,

    v.

GIRARD RESOURCES &
RECYCLING LLC,

             Defendant.

CASE NO. 2:21-cv-00443-RAJ-JRC

REPORT AND RECOMMENDATION

NOTED FOR: August 13, 2021

       This matter has been referred to the undersigned by the District Court (Dkt. 7) and is before the Court on defendant's motion to dismiss.  Dkt. 12.

       Plaintiff, a non-profit corporation, brings suit against defendant (operator of a facility that includes an industrial plant yard) under a portion of the Clean Water Act ("CWA"), 33 U.S.C. § 1311(a), for the alleged unpermitted discharge of stormwater associated with industrial activity into tributaries that lead to the Snoqualmie River.  *See* Dkt. 1, at 1–2.  Defendant now moves for dismissal under Fed. R. Civ. P. 12(b)(1), arguing that plaintiff's notice letter to defendant was inadequate and that this inadequacy divests the Court of subject matter jurisdiction.

1    However, plaintiff's letter that defendant was allegedly violating the CWA by

2    discharging stormwater associated with industrial activity contained sufficient information to put

3    defendant on notice regarding plaintiff's claim.  The letter identified the activity constituting a

4    violation (discharge of stormwater contaminated by industrial activity) and the standard violated

5    (provisions of the CWA requiring a permit authorizing such discharges).   The notice letter also

6    adequately identified the location of the alleged unlawful discharges (point sources including

7    pipes, channels, and ditches that conveyed such stormwater from various identified areas of the

8    facility).

9    Therefore, the motion to dismiss (Dkt. 12) should be denied.

10    **BACKGROUND**

11    Plaintiff brought suit on April 2, 2021, under 33 U.S.C. § 1365 (a portion of the CWA

12    permitting citizen suits).  Dkt. 1.  According to plaintiff, defendant's facility's stormwater

13    discharge requires authorization by a National Pollutant Discharge Elimination System

14    ("NPDES") permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342—a permit that

15    defendant has failed to obtain.  *See* Dkt. 1, at 2, 7.  Plaintiff alleges that it notified defendant of

16    plaintiff's intent to sue under the CWA by letter dated January 8, 2021, and delivered January

17    11, 2021.  Dkt. 1, at 2.  Plaintiff seeks a declaratory judgment, injunctive relief, civil penalties,

18    and litigation expenses.  Dkt. 1, at 11.

19    Defendant has filed a motion to dismiss.  Dkt. 12.  Briefing on the motion is complete,

20    and the matter is ripe for review.

21    **DISCUSSION**

22    Defendant characterizes the notice letter as inadequate because it essentially says

23    "nothing more than '[defendant] should have a general permit because it discharges unidentified

24

REPORT AND RECOMMENDATION - 2

pollutants from somewhere on its Facility.'"  Dkt. 12, at 15.  The Court disagrees, as discussed herein.

## I. Legal Standards—Rule 12(b)(1) and the CWA

A Federal Rule of Civil Procedure 12(b)(1) attack on subject matter jurisdiction may be facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, the challenger asserts that the complaint's allegations are insufficient on their face to invoke federal jurisdiction.  *Id*.  In contrast, a factual attack disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.  *Id*.

To resolve a factual attack on jurisdiction, the Court may review evidence beyond the complaint without converting the motion to dismiss into one for summary judgment and need not presume the truthfulness of the plaintiff's allegations.  *Id*.  A factual motion to dismiss supported by proper declarations or evidence should be opposed by responsive evidence that establishes subject matter jurisdiction.  *Id*.

A portion of the CWA, 33 U.S.C. § 1311(a), prohibits discharge of any "pollutant" by a person except in compliance with other provisions of the statute, one of which establishes a permitting program, the "National Pollutant Discharge Elimination System" ("NPDES") (*see* 33 U.S.C. § 1342).  Put differently, the "'discharge of any pollutant' from a 'point source' into navigable waters is unlawful under the Clean Water Act unless made per the terms of an NPDES permit obtained from . . . the authorized state agency."  *Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor Res., Inc.*, 299 F.3d 1007, 1015 (9th Cir. 2002).

Section 1342 requires such a permit before a facility may discharge stormwater if the stormwater discharge is "associated with industrial activity."  33 U.S.C. § 1342(p)(2)(B); *see also Ecological Rts. Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 505 (9th Cir. 2013); 40

1    C.F.R. § 122.26(b)(14) (defining the types of stormwater that are "associated with industrial

2    activity").  The Court observes that there is some dispute between the parties regarding whether

3    "stormwater associated with industrial activity" is therefore a "pollutant" as referenced in §

4    1311(a) of the CWA—but the Court does not find it necessary to resolve this matter to decide the

5    pending motion, as discussed in greater detail, below.

6         Also relevant here, a private individual may bring suit under the CWA where one is

7    violating "an effluent standard or limitation under this chapter."  33 U.S.C. § 1365(a)(1).  Before

8    bringing such a suit, however, the prospective plaintiff must provide notice to the alleged

9    violator (as well as the Administrator of the Environmental Protection Agency and the State) and

10   wait 60 days.  33 U.S.C. § 1365(b)(1)(A).

11        Federal regulations govern the content of a notice letter.  It must specify—

12        sufficient information to permit the recipient to identify the specific standard,
         limitation, or order alleged to have been violated, the activity alleged to constitute
13        a violation, the person or persons responsible for the alleged violation, the location
         of the alleged violation, the date" or dates of such violation, and the full name,
14        address, and telephone number of the person giving notice.

15   40 C.F.R. § 135.3(a).

16        Failure to provide adequate notice divests the Court of subject matter jurisdiction.  *Ctr.*

17   *For Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 800 (9th Cir. 2009).  The

18   notice requirement's purpose is to allow "[g]overnment agencies to take responsibility for

19   enforcing environmental regulations, thus obviating the need for citizen suits" and to give "the

20   alleged violator an opportunity to bring itself into complete compliance with the Act and thus

21   likewise render unnecessary a citizen suit."  *Id.* (internal quotation marks and citations omitted).

22        Regarding the notice requirement, the Ninth Circuit has explained that "even at our most

23   lenient we have never abandoned the requirement that there be a true notice that tells a target

24

1    precisely what it allegedly did wrong, and when.  The target is not required to play a guessing

2    game in that respect." *Id.* at 801.

3         The Court turns to defendant's particular arguments challenging the sufficiency of the

4    notice letter.

5    **II. Failure to Identify the Applicable Standard, Limitation, or Order**

6         Defendant first argues that the notice letter is inadequate because it cites failure to

7    comply with two, mutually exclusive general permits and does not contain sufficient information

8    for defendant to "identify the specific standard, limitation, or order alleged to have been

9    violated." Dkt. 12, at 16.  This argument fails.

10        According to the allegations of the complaint, there are, as relevant here, two types of

11   general NPDES permits that allow stormwater discharge from industrial activities into State

12   waters. Dkt. 1, at 5.  These are the Industrial Stormwater General Permit ("ISGP") and the Sand

13   and Gravel General Permit ("SGGP"). Dkt. 1, at 5–6.  The Washington State Department of

14   Ecology may also issue other, individual NPDES permits "in lieu of or in combination with a

15   General Permit[.]" Dkt. 1, at 6.  Notwithstanding the detail in the complaint regarding these

16   different types of permits, the theory of the complaint is that defendant has not obtained any

17   permit—ISGP, SGGP, or otherwise—permitting the stormwater discharges.  Dkt. 1, at 7.

18        Although the notice letter advances a laundry list of potential violations of ISGP and

19   SGGP permits, the letter does not identify particular permits held by the facility.  Instead, the

20   letter states that "[s]hould [defendant] have or obtain General Permit [i.e. ISGP and/or SGGP]

21   coverage for the facility, compliance with either General Permit requires [defendant] to correct

22   the deficiencies identified below." Dkt. 1, at 13.

23        Defendant asserts that the notice letter forces it to guess whether the ISGP or SGGP

24

1  permit applies and that the permits are mutually exclusive.  Dkt. 12, at 16.  Defendant argues that

2  due to significant and material differences between the two permits, "the Notice Letter's

3  indecision as to which general permit applies renders the Notice Letter useless." Dkt. 12, at 16.

4      But plaintiff explains that the only claim being brought in the complaint arises from the

5  notice letter's statement that defendant has violated 33 U.S.C. § 1311(a) by discharging

6  "pollutants, including stormwater, from its facility[.]" Dkt. 1, at 12.  Plaintiff asserts that the

7  notice letter informed defendant that it required a permit to authorize the discharge of pollutants

8  via stormwater whenever there is at least 0.1 inch of precipitation and that the language

9  regarding the ISGP and SGGP permits was "tentative and anticipatory of [defendant's] coverage

10  under one of these general permits." Dkt. 17, at 5.  In short, the claim being brought is for

11  failure to obtain a permit (as required by the CWA)—not violation of a permit that defendant

12  holds.  It is of no consequence that the notice letter also discussed potential violations of ISGP

13  and SGGP permits.

14      The notice letter adequately placed defendant on notice of the "standards" allegedly

15  violated related to the claim of unpermitted discharge of stormwater:  33 U.S.C. § 1311(a) and

16  40 C.F.R. 122.26(b)(14).  *Accord Cal. Sportfishing Prot. All. v. Shiloh Grp.*, LLC, 268 F. Supp.

17  3d 1029, 1051 (N.D. Cal. 2017) (finding that a notice identifying § 1311 and 40 C.F.R. § 122.30

18  adequately set forth the specific standards allegedly violated by the unpermitted discharge of

19  polluted storm water associated with industrial activity).

20  **III.  Failure to Identify the Pollutant**

21      Defendant next argues that the notice letter was deficient because it did not identify

22  which particular pollutants are being discharged and because "stormwater" is not a pollutant.

23

24

REPORT AND RECOMMENDATION - 6

1    Dkt. 12, at 16–17.

2           But the applicable regulation governing the content of a notice letter does not specify that

3    the alleged "pollutant" must be identified in the letter.  Instead, as noted above, the notice letter

4    must include sufficient information to permit the recipient to identify the standard violated and

5    the activity constituting the violation.  *See* 40 C.F.R. § 135.3(a).  Here, the notice letter

6    identified the unpermitted discharge of stormwater associated with industrial activity, which

7    would be a violation of the Clean Water Act, if established.  *See* 33 U.S.C. § 1342(p)(2)(B); *see*

8    *also Ecological Rts. Found.*, 713 F.3d at 505.

9           Defendant asserts that it has established that the letter "needed to identify one or more

10   specific pollutants in order to fulfill its obligation to identify the 'specific standard, limitation, or

11   order alleged to have been violated." Dkt. 19, at 6.  But defendant cites to no authority holding

12   that a notice letter is inadequate if it alleges unpermitted discharge of stormwater associated with

13   industrial activity in violation of 33 U.S.C. § 1342(p)(2)(B), yet fails to allege the precise

14   substances present in the stormwater.  The purpose of the notice letter—identifying the alleged

15   unlawful discharge—has been satisfied by simply describing stormwater "associated with

16   industrial activity."

17          Defendant cites *Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of N.Y.*, 273

18   F.3d 481 (2d Cir. 2001), *adhered to on reconsideration,* 451 F.3d 77 (2d Cir. 2006).  In *Catskill*

19   *Mountains*, as here, the complaint alleged violation of 33 U.S.C. § 1311(a)'s prohibition against

20   the discharge of "pollutants" without an NPDES permit as required by 33 U.S.C. § 1342.  The

21   pollution included the "alleged [unpermitted] discharges of . . . turbidity . . . and elevated

22   temperatures." Dkt. 1, at 1–2; *see Catskill Mountains*, 273 F.3d at 485–86 (internal quotation

23   marks omitted).  The *Catskill Mountains* notice letter had, by contrast, alleged discharge of

24

1    "pollutants in the form of Total Suspended Solids and Settleable Solids." *Id.* (internal quotation

2    marks omitted).

3    The *Catskill Mountains* court held that "to be 'sufficient' [under 40 C.F.R. § 135.3(a)],

4    the information provided [in the notice letter] must include the pollutant alleged to be the basis of

5    a violation subsequently alleged in the complaint." *Id.* at 487; *see also id.* at 488 ("an NOI letter

6    must identify with reasonable specificity each pollutant that the defendant is alleged to have

7    discharged unlawfully.").  The issue was a mismatch between the substances identified in the

8    notice letter and in the complaint.  The court held that the notice letter was adequate to inform

9    defendants of claims regarding water turbidity but not water temperature. *Id.* at 488–89.

10   In this case, however, plaintiff has consistently claimed violation by unpermitted

11   discharge of stormwater associated with industrial activities. *See* Dkt. 1, at 1 (complaint), 12

12   (notice letter).  Even if *Catskill Mountains* were binding on this Court, plaintiff met its obligation

13   to provide a notice letter informing defendant "with reasonable specificity" of the particular

14   substance that plaintiff asserts is being unlawfully discharged.

15   Defendant argues that this cannot be the case, because "stormwater" is not a pollutant

16   under the CWA.  Dkt. 12, at 17.  But plaintiff is alleging that "stormwater associated with

17   industrial activities"—not just any "stormwater"—is being unlawfully discharged. *See* Dkt. 17,

18   at 13 ("the unpermitted discharge claim is the only one asserted in the Complaint").  At least one

19   judge in this district has issued an order explaining that this essentially means that Congress has

20   found that stormwater associated with industrial activity is a pollutant. *See Puget Soundkeeper*

21   *All. v. Whitley Mfg. Co.*, 145 F. Supp. 3d 1054, 1057–58 (W.D. Wash. 2015).  Regardless, the

22   issue of whether or not "stormwater associated with industrial activity" is, strictly speaking, a

23   pollutant under the CWA is not before the Court.  Rather, the issue is whether plaintiff

24

1    adequately put defendant on notice of the standard violated and the activity violating that

2    standard to allow this Court to take subject matter jurisdiction over the dispute.

3        Notably, moreover, underpinning *Catskills Mountains*' holding was the fact that the

4    presence of other substances than those identified in the notice letter could form the basis for

5    distinct penalties under the CWA.  Although the Court agrees that plaintiff cannot amend its

6    arguments to seek (or to clarify that it seeks) penalties separate from those appropriate for

7    discharge of industrial stormwater, that is not the situation presented here.  Defendant has been

8    given notice of the basis for the lawsuit and the notice was sufficient to allow defendant to

9    identify and rectify the problem.

10       *Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Hercules, Inc.*, 50 F.3d 1239, 1248 (3d Cir.

11   1995), also cited by defendant, does not support its arguments either.  In that case the Third

12   Circuit primarily concluded that a notice letter was adequately specific.  *Id.*  And defendant's

13   other cited cases do not involve any discussion of whether or not a notice letter was adequate

14   and, therefore, will not be addressed further.  *Gallagher v. E. Buffalo Twp.*, No. 4:12-CV-00777,

15   2013 WL 4647377, at *9 (M.D. Pa. Aug. 29, 2013); *Friends of Outlet Creek v. Grist Creek*

16   *Aggregates, LLC*, No. 16-CV-00431-JSW, 2019 WL 1975434, at *1 (N.D. Cal. Mar. 19, 2019).

17       **IV.  Failure to Specify Discharge Locations**

18       Defendant's final argument is that the notice letter fails to specify where, "at the over

19   four-acre Facility, allegedly illicit discharges were occurring."  Dkt. 12, at 19.  Thus, it argues,

20   the notice letter failed to provide sufficient information for defendant to identify the location of

21   the alleged violation, as required by 40 C.F.R. § 135.3(a).

22       The notice letter alleged discharge of stormwater from defendant's "industrial plant yard,

23   concrete and slurry processing areas, immediate access roads, material handling areas, areas used

24

1    for the storage and maintenance of material handling equipment, raw material and intermediate

2    and material storage areas via runoff, channels and ditches, pipes and other point sources." Dkt.

3    1, at 13. "NPDES permits are required for discharges from any 'point source,' but not for

4    discharges from 'nonpoint sources.'" *Ecological Rts. Found.*, 713 F.3d at 505. A "point source"

5    is some form of "discernible, confined and discrete conveyance" such as a pipe. 33 U.S.C. §

6    1362(14).

7        Defendant argues that this language is "a paste and copy from" the definition of "[s]torm

8    water discharge associated with industrial activity" in 20 C.F.R. § 122.26(b)(14). Dkt. 12, at 18.

9    That portion of the regulation states that—

10       For the categories of industries identified in this section, the term includes, but is
         not limited to, storm water discharges from **industrial plant yards**; **immediate**
11       **access roads** and rail lines used or traveled by carriers of raw materials,
         manufactured products, waste material, or by-products used or created by the
12       facility; **material handling sites**; refuse sites; sites used for the application or
         disposal of process waste waters . . . ; **sites used for the storage and maintenance**
13       **of material handling equipment**; sites used for residual treatment, storage, or
         disposal; shipping and receiving areas; manufacturing buildings; **storage areas**
14       **(including tank farms) for raw materials, and intermediate and final products**;
         and areas where industrial activity has taken place in the past and significant
15       materials remain and are exposed to storm water. For the purposes of this
         paragraph, material handling activities include storage, loading and unloading,
16       transportation, or conveyance of any raw material, intermediate product, final
         product, by-product or waste product.

17

18   20 C.F.R. § 122.26(b)(14) (emphasis added to illustrate similarities to the notice letter language).

19       Although there is overlap between the notice letter and the definition in 122.26(b)(14),

20   the notice letter does not simply "copy and paste" the lengthy statutory definition of storm water

21   discharge associated with industrial activity in the regulation.

22       Similarly, defendant argues that when the notice letter specified such discharges of

23   stormwater via "runoff, channels and ditches, pipes and other point sources," the notice letter

24

1  simply copied regulatory language from 33 U.S.C. § 1362(14).  That statute defines a "point

2  source" as "any discernible, confined and discrete conveyance, including but not limited to any

3  **pipe**, **ditch**, **channel**, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated

4  animal feeding operation, or vessel or other floating craft, from which pollutants are or may be

5  discharged."  *Id.* (emphasis added to indicate similarities to the notice letter language).  Again,

6  although there is some overlap, the notice letter does not simply copy the statutory language.

7       As for the specificity required, the notice letter essentially tells defendant that runoff,

8  channels and ditches, pipes, and other point sources are discharging stormwater from specific

9  locations:  the industrial plant yard, the concrete and slurry processing areas, immediate access

10  roads, material handling areas, areas used for storage and maintenance of material handling

11  equipment, and raw material and intermediate and material storage areas via runoff.  *See* Dkt. 1,

12  at 13.  This is a lengthy list, but precise enough, in the Court's view, to provide defendant notice

13  of the source of the allegedly unlawful stormwater discharge.  Plaintiff went beyond simply

14  naming the facility as the location.  *See* Dkt. 12, at 18.

15       Comparison to other Ninth Circuit and district court discussions of notice letters

16  illustrates the point.  In *Ecological Rights Foundation*, the Ninth Circuit examined claims that a

17  utility company's utility poles released wood preservatives containing toxic chemicals, which

18  were the basis for a CWA suit alleging discharge of pollutant-bearing storm water runoff.  713

19  F.3d at 519.  The Court explained that a notice letter needs only to be "reasonably specific as to

20  the nature and time of the alleged violations. . . .  The letter does not need to describe every detail

21  of every violation; it need only provide enough information that the defendant can identify and

22  correct the problem."  *Id.* at 519 (internal quotation marks and citation omitted).  Applying this

23

24

REPORT AND RECOMMENDATION - 11

1    standard, the plaintiff's notice—

2          that preservative-treated utility poles owned by [the utility company and other
           entities] in four counties allegedly discharged pollutants during days of significant
3          precipitation was sufficient to advise [the utility company of the plaintiff's claims],
           especially where [the plaintiff] identified representative poles and referenced [the
4          utility company's] superior ability to ascertain the locations of other poles that
           might be at issue.

5    *Id.*

6          Here, plaintiff also asserts that defendant is in a better position to identify precisely which

7    of the specific locations identified in the notice letter is the source of the allegedly unlawful

8    stormwater discharge.  *Ecological Rights Foundation* illustrates that plaintiff does not need to

9    identify with specificity each location of stormwater discharge on the facility.  Notably, in

10   *Ecological Rights Foundation*, the Ninth Circuit held that the notice letter was adequate even

11   though on the merits, plaintiff failed to establish that there was discharge from a "point source."

12   713 F.3d at 509–10.

13         Indeed, simply stating in a notice letter that "numerous discharge points connected to a

14   system of underground storm water conveyances throughout [a] 31-acre Facility" has been

15   upheld as providing adequate notice of the alleged CWA violations.  *See Cal. Sportfishing Prot.*

16   *All.*, 268 F. Supp. 3d, at 1051.  Similarly here, plaintiff alleges that pipes, channels, and ditches,

17   among other means, convey stormwater associated with industrial activity from various locations

18   at the facility.  This is not a situation where, as defendant argues, plaintiff has failed to allege

19   anything more than nonpoint source discharges—pipes, channels, and ditches are all part of the

20   definition of a "point source" in the CWA, as defendant recognizes.  *See* Dkt. 19, at 5 (citing 33

21   U.S.C. § 1362(14)).

22         Defendant cites two out-of-circuit cases as authority that the location-allegations of the

23   notice letter are inadequate, here.  *See* Dkt. 12, at 18.  These cases are distinguishable.  In

24

REPORT AND RECOMMENDATION - 12

1  *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 621–22

2  (D. Md. 2011), the plaintiff simply named the entire facility.  Here, however, plaintiff has

3  identified specific areas in the notice letter that are the sources of the alleged unlawful discharge.

4  In *Karr v. Hefner*, 475 F.3d 1192, 1203 (10th Cir. 2007), the plaintiff's notice letter did not

5  identify a point-source (simply pointing to "construction activities" at a well site)—but here,

6  plaintiff has adequately done so.

7        Defendant's cited in-circuit authority is an unpublished ruling from this District in which

8  the Court concluded that a notice letter was insufficient where plaintiff identified the location as

9  the "property of Port of Olympia, and particularly the former Cascade Pole site, present Log

10  Yard, LOTT facility, and East Bay Redevelopment Area with the accompanying collection

11  systems and discharge points, as permitted, unpermitted, and proposed."  *West v. Johnson*, No.

12  C08-5741RJB, 2009 WL 2477646, at *5 (W.D. Wash. Aug. 10, 2009) (internal quotations

13  omitted).  At issue in *West* was a vague letter that took an "everything but the kitchen sink"

14  approach and alleged "most of the violations listed in the CWA."  *Id.*  While the Court is not

15  bound by this ruling, the Court has considered it for its persuasive value and finds that the notice

16  letter in *West* is not analogous to the notice letter here.  *See also In re West*, No. MC11-

17  5022RBL, 2011 WL 13121697, at *1 (W.D. Wash. Oct. 6, 2011) (citing *West v. Johnson* and

18  barring the plaintiff in that case from further litigation in this District because plaintiff was a

19  vexatious litigant).

20        "The point of the [CWA's] notice requirement is not to *prove* violations, it is to inform

21  the polluter about what it is doing wrong[.]"  *Waterkeepers N. Cal. v. AG Indus. Mfg.*, 375 F.3d

22  913, 917–18 (9th Cir. 2004).  Here, although the notice letter is broad, it contained sufficient

23

24

1    information to put defendant on notice of plaintiff's claim in the complaint.

2                                    **CONCLUSION**

3          For the reasons set forth above, the Court recommends that the motion to dismiss (Dkt.

4    12) be denied.

5          Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

6    fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

7    6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

8    review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

9    of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

10   *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

11   imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **August 13,**

12   **2021,** as noted in the caption.

13         Dated this 27th day of August, 2021.

14

15                                                    _____

16                                                    J. Richard Creatura
                                                     Chief United States Magistrate Judge

17

18

19

20

21

22

23

24