UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WASTE ACTION PROJECT,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>GIRARD RESOURCES & RECYCLING, LLC,<br><br>　　　　　　Defendant. | CASE NO. C21-0443RAJ-JRC<br><br>ORDER |

ORDER - 1

## I. INTRODUCTION

Before the court are: (1) Defendant Girard Resources & Recycling, LLC's ("Girard") motion to dismiss (MTD (Dkt. # 12); MTD Reply (Dkt. # 19)); (2) Plaintiff Waste Action Project's ("Waste Action") opposition to Girard's motion to dismiss (MTD Resp. (Dkt. # 17)); (3) United States Magistrate Judge J. Richard Creatura's report and recommendation (R&R (Dkt. # 20)); (4) Girard's objections to the report and recommendation (Obj. (Dkt. # 21)); and (5) Waste Action's response to Girard's objections (Obj. Resp. (Dkt. # 22)). Having carefully reviewed the foregoing, all other relevant documents, and the governing law, the court ADOPTS Magistrate Judge Creatura's report and recommendation in its entirety, OVERRULES Girard's objections, and DENIES Girard's motion to dismiss.

## II. BACKGROUND

Waste Action brings this action against Girard under 33 U.S.C. § 1365, which is a portion of the Clean Water Act ("CWA") that permits citizen suits. (*See* Compl. (Dkt. # 1) ¶ 1.) Waste Action served Girard with notice of its intent to sue under the CWA (the "notice letter")[1] by certified mail on January 8, 2021.[2] (*See id.* ¶¶ 3-5; *see also id.* at 12-17 (Notice Letter); *id.* at 18-77 (Notice Letter, Ex. A).[3]) The notice letter begins with

---

[1] The notice letter was similarly served on Girard's registered agent, the Administrators of the Environmental Protection Agency ("EPA") and EPA Region 10, and the Director of the Washington Department of Ecology. (Compl. at 2.)

[2] *See* 40 C.F.R. § 135.2(c) (stating that notice is deemed served on postmark date if mailed).

[3] The court cites to the page numbers in the CM/ECF headers when referring to the parties' pleadings.

a section titled "Unpermitted Discharges." (*Id.* at 12.) In that section, Waste Action alleges that Girard "has violated and continues to violate Section 301(a) of the CWA" by "discharging pollutants, including stormwater, from its facility used for concrete processing and recycling, drill slurry processing and disposal, material dumping, stockpiling and distribution and other industrial activities located at or about 28194 SE Stearns Road, Snoqualmie, WA . . . to waters of the United States without a [National Pollutant Discharge Elimination System ("NPDES")] permit." (*Id.* at 12-13 (claiming that the facility discharges "industrial stormwater and pollutants" to the Snoqualmie River and the tributary creek).) These discharges, Waste Action alleges, are "'stormwater discharges associated with industrial activity' under 40 C.F.R. § 122.26(b)(14) due to the industrial nature of the activities Girard conducts at its facility." (*Id.* at 13; *see also id.* at 12 (alleging that "stormwater associated with industrial activity" is a "pollutant" under Section 301 of the CWA).) The allegedly unlawful discharges include, among other things, stormwater discharges from Girard's "industrial plant yard, concrete and slurry processing areas, immediate access roads, material handling areas, areas used for the storage and maintenance of material handling equipment, raw material and intermediate and material storage areas via runoff, channels and ditches, pipes and other point sources."[4] (*Id.* at 13.) Waste Action concludes this section of the letter by stating that these discharges are not permitted by Girard's

---

[4] At the end of this section, Waste Action notes that the unpermitted discharges of pollutants, in violation of the CWA, occur whenever there is "at least 0.1 inch of precipitation." (Compl. at 13 (citing Notice Letter, Ex. A, which lists precipitation data for Girard's facility's area between 2016 and 2020).)

ORDER - 3

pretreatment permit and will continue to violate the CWA "until Girard obtains and comes into compliance with a NPDES permit authorizing such discharges." (*Id.*)

The second section of the notice letter describes two potentially applicable and available general NPDES permits, the Industrial Stormwater General Permit ("ISGP") and the Sand and Gravel General Permit ("SGGP"), and some of the pollution control, monitoring, and reporting conditions associated with those permits. (*Id.* at 13-15 (discussing Girard's failure to comply with those conditions).) Waste Action asserts that "[s]hould Girard have or obtain [g]eneral [p]ermit coverage for the facility, compliance with either [g]eneral [p]ermit requires Girard to correct the deficiencies identified" in the letter. (*Id.* at 13-14 (stating that it intends to sue "for these violations of the conditions of the [g]eneral [p]ermits").[5])

Waste Action filed its complaint, which includes a single cause of action, against Girard on April 2, 2021. It alleges that Girard has and continues to violate Section 301(a) of the CWA, 33 U.S.C. § 1311(a), by "discharg[ing] pollutants, including stormwater associated with industrial activity, to navigable waters via point source without authorization by a NPDES permit issued under Section 402, 33 U.S.C. § 1342." (*See id.*; *see also id.* ¶¶ 1, 12, 19-23, 30-41.) In the background section of its complaint, Waste Action again describes two types of available and applicable general NPDES permits, the

---

[5] In the third section of the letter, Waste Action alleges violations of Sections 301 and 307 of the CWA and the conditions of Girard's pretreatment permit with respect to Girard's facility's "operations of" and "discharges of wastewater and pollutants." (Compl. at 15-16.) In its complaint, however, Waste Action clarifies that it does not bring any claims against Girard for the violations of the pretreatment permit described in the notice letter. (*Id.* ¶ 24.)

ISGP and SGGP, and some of the pollution control, monitoring, and reporting conditions associated with those permits. (*Id.* ¶¶ 13-18, 25-30.) Although Waste Action also describes the ways in which Girard continues to violate those conditions, it alleges that Girard does not have a NPDES permit and, accordingly, does not explicitly assert any claims based on those conditions.[6] (*Id.* ¶¶ 23, 25-30.)

Girard moved to dismiss Waste Action's complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (*See* MTD at 1-2.) It argued that Waste Action's complaint must be dismissed because Waste Action's notice letter failed to include the contents necessary to meet the CWA's pre-suit notice requirement, and thus, the court lacks subject matter jurisdiction over this case. Specifically, Girard alleged that Waste Action's notice letter failed to state: "1) what national pollutant discharge elimination system . . . permit it should hold; 2) the specific pollutant(s) alleged discharged from Girard's site; 3) the sampling, reporting, and response actions Girard failed to conduct related to the alleged discharges; and 4) the location(s) where such discharges are occurring." (*Id.* at 2 (stating that the letter "simply cribs generic statutory and regulatory words and phrases of general applicability, untethered to any specific "what, when, why, where, who or how" at Girard's site").)

---

[6] Waste Action claims that the "purpose of these allegations is to indicate the seriousness of Girard's violations to support the imposition of injunctive relief and the imposition of a significant penalty." (MTD Resp. at 6; *see also* Obj. Resp. at 3 ("[B]ecause Defendant does not have NPDES coverage for its industrial stormwater discharges, those conditions are not currently imposed on Defendant, and its failure to take measures to mitigate its stormwater pollution is not a separate claim in the complaint.").)

Magistrate Judge Creatura issued a report and recommendation recommending that the court deny Girard's motion to dismiss. (*See* R&R at 2.) Specifically, Magistrate Judge Creatura concluded that Waste Action's notice letter is adequate to support the court's exercise of subject matter jurisdiction over this action because it satisfied 40 C.F.R. § 135.3(a)'s notice requirements[7] and was sufficiently specific to put Girard on notice regarding Waste Action's claim. (*See* R&R at 2, 13-14.) Girard timely filed its objections to the report and recommendation, and Waste Action timely responded to Girard's objections. (*See* Obj.; Obj. Resp.)

### III.   ANALYSIS

The court begins by setting forth the standard of review before turning to the merits of Girard's objections.

**A.   Standard of Review**

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. Fed. R. Civ. P. 72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id.* "A judge of the court may accept, reject, or modify, in whole or in part,

---

[7] In order to comply with 40 C.F.R. § 135.3(a), the plaintiff must send an intent-to-sue letter that contains:

> sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a).

ORDER - 6

the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The court reviews de novo those portions of the report and recommendation to which specific written objection is made. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

**B.      Girard's Objections to the Report and Recommendation**

Girard objects to the three legal conclusions underlying Magistrate Judge Creatura's recommendation that the court deny Girard's motion to dismiss. (*See generally* Obj. at 2-11; R&R at 5-13.) First, it objects to Magistrate Judge Creatura's conclusion that Waste Action's notice letter "adequately placed [Girard] on notice of the 'standards' allegedly violated related to the claim of unpermitted discharge of stormwater [associated with industrial activity]: 33 U.S.C. § 1311(a) and 40 C.F.R. § 122.26(b)(14)." (Obj. at 3-6; R&R at 5-6.)  To begin, Girard claims that Magistrate Judge Creatura "ignore[d] the plethora of" alleged violations of two general NPDES permits contained in Waste Action's complaint and notice letter when he concluded that Waste Action's complaint only contains a single claim based on Girard's discharge of stormwater associated with industrial activity without a NPDES permit. (Obj. at 3.) Girard then argues that Waste Action's letter does not put it on notice of "the 'standards' allegedly violated" because: (1) the failure to hold an NPDES permit is not a violation of a standard, limitation, or order; and (2) "stormwater discharges associated with industrial activity" are not "pollutants" under the CWA, and thus, the unpermitted discharge of such stormwater does not constitute the violation of a standard, limitation, or order. (*Id.* at 4-6.)

ORDER - 7

1     Second, Girard objects to Magistrate Judge Creatura's conclusion that 40 C.F.R.
2 § 135.3(a) does not require that the alleged "pollutant" be identified in the notice letter
3 and that "[t]he purpose of the notice letter—identifying the alleged unlawful discharge—
4 has been satisfied by simply describing stormwater 'associated with industrial activity.'"
5 (Obj. at 6-8; R&R at 6-9.)  It contends that "the CWA requires [Waste Action] to allege
6 the discharge or addition of one or more specific pollutants in order to meet the [n]otice
7 [r]egulation and [Ninth] Circuit precedent."[8]  (Obj. at 6-8 (claiming that stormwater
8 discharges associated with industrial activity is not a pollutant under the CWA, in the
9 absence of Waste Action's identification of specific pollutants within the stormwater).)
10     Third, Girard objects to Magistrate Judge Creatura's conclusion that the notice letter
11 adequately provides Girard notice of the locations—i.e., point sources—of the allegedly
12 unlawful discharges.  (*See* Obj. at 8-10; R&R at 9-13 ("[A]lthough the notice letter is
13 broad, it contained sufficient information to put [Girard] on notice of [Waste Action's]
14 claim in the complaint.").)  Girard complains that the notice letter "merely plucked
15 generic words and phrases" from the statutory and regulatory definitions of "point
16 source" and "storm water associated with industrial activity" "without any indication that
17 such facilities even exist at the Girard Facility." (Obj. at 8-10.)

     Girard's objections essentially reiterate its arguments from previous filings and do
19 not raise any novel issues that were not addressed by Magistrate Judge Creatura.  (*See*

---

[8] The cases that Girard cites to support its argument that the notice letter must identify one or more specific pollutants do not include any discussion or analysis regarding the adequacy of the plaintiff's pre-suit notice. (*See* Obj. at 7 n.21-22, 8 n.25, 28.)

ORDER - 8

*generally* Obj.; MTD; MTD Reply.) The court has thoroughly examined the record before it and finds Magistrate Judge Creatura's reasoning persuasive in light of that record. The court also independently finds that the notice letter satisfied 40 C.F.R. § 135.3(a)'s notice requirements and sufficiently informed Girard about what it was allegedly doing wrong with respect to Waste Action's unpermitted discharge of stormwater associated with industrial activity claim and what it needed to do to avoid suit. (*See* Compl. at 12-13); *see also Waterkeepers N. Cal. v. AG Indus. Mfg., Inc.*, 375 F.3d 913, 918-20 (9th Cir. 2004) (stating that the objective of the notice requirement is not to prove violations, it is to inform the polluter about what it is doing wrong and to allow it an opportunity to correct the problem); *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 951 (9th Cir. 2002) ("The key language in the notice regulation is the phrase 'sufficient information to permit the recipient to identify' the alleged violations and bring itself into compliance.").

Moreover, the court notes that the argument underlying many of Girard's objections is that "stormwater associated with industrial activity" is not a recognized pollutant under the CWA. (*See* Obj. at 4-5, 7-8.) But that argument goes to the sufficiency of Waste Action's unpermitted discharge claim and is thus more appropriately raised in a Rule 12(b)(6) motion to dismiss or a motion for summary judgment.[9] Girard has moved to dismiss only under Rule 12(b)(1), which asks the court

---

[9] To establish liability for an unpermitted discharge under the CWA, a plaintiff must show that the defendant "(1) discharged (2) a pollutant (3) to navigable waters (4) from a point source (5) without permit authorization." *Puget Soundkeeper All. v. Whitley Mfg. Co.*, 145 F. Supp. 3d 1054, 1055 (W.D. Wash. 2015).

ORDER - 9

simply to determine the sufficiency of the notice letter under 40 C.F.R. § 135.3(a). *See, e.g.*, *Humboldt Baykeeper v. Union Pac. R. Co.*, No. C 06 02560 JSW, 2006 WL 3411877, at *1-5 (N.D. Cal. Nov. 27, 2006) (evaluating both the adequacy of the plaintiffs' notice letter and the sufficiency of the plaintiffs' unpermitted discharge CWA claim because the defendants brought Rule 12(b)(1) and 12(b)(6) motions to dismiss); *Waterkeepers*, 375 F.3d at 918-20 ("Regardless of whether WaterKeepers is able to prove each claimed discharge, its intent-to-sue letter put AG Industrial on notice as to the violations that WaterKeepers would allege in its complaint. The statute and regulation require no more."). Thus, as Magistrate Judge Creatura stated,

> the issue of whether or not "stormwater associated with industrial activity" is, strictly speaking, a pollutant under the CWA is not before the [c]ourt. Rather, the issue is whether plaintiff adequately put defendant on notice of the standard violated and the activity violating that standard to allow this [c]ourt to take subject matter jurisdiction over the dispute.[10]

(R&R at 8-9.) The court agrees with Magistrate Judge Creatura's assessment that the notice letter adequately accomplishes that task. (*Id.* at 5-6.)

Accordingly, the court DENIES Girard's motion to dismiss for the same reasons set forth by Magistrate Judge Creatura in his report and recommendation.

---

[10] Accordingly, Magistrate Judge Creatura did not reach a legal conclusion as to whether "stormwater associated with industrial activity" is a pollutant under Section 303(a) of the CWA. (*See* R&R at 4.) He noted, however, that "[a]t least one judge in this district has issued an order explaining that . . . stormwater associated with industrial activity is a pollutant." (*Id.* at 8-9 (citing *Whitley*, 145 F. Supp. 3d at 1057-58)); *see also Waste Action Project v. Snoqualmie Mill Ventures LLC*, No. C21-0240MJP, 2021 WL 4290427, at *4 (W.D. Wash. Sept. 21, 2021) (concluding the same).

## IV.   CONCLUSION

For the foregoing reasons, the court ADOPTS the report and recommendation in its entirety (Dkt. # 20), OVERRULES Girard's objections (Dkt. # 21), and DENIES Girard's motion to dismiss (Dkt. # 12).  The Clerk is directed to send copies of this order to the parties and to Magistrate Judge Creatura.

Dated this 31st day of March, 2022.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge