HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WASTE ACTION PROJECT,<br><br>　　　　　Plainitff,<br><br>　　v.<br><br>GIRARD RESOURCES &<br>RECYCLING, LLC,<br><br>　　　　　Defendant. | CASE NO. 2:21-cv-00443-RAJ-GJL<br><br>ORDER |

## I.　INTRODUCTION

THIS MATTER comes before the Court on Defendant Girard Resources & Recycling LLC's ("Girard") Motion for Reconsideration of Order Denying Motion to Dismiss for Lack of Jurisdiction, Dkt. # 200, and Plaintiff Waste Action Projection's ("WAP") Motion to Compel Mediation, Dkt. # 215. The Court has reviewed the motions, the submissions in support of and in opposition to the motions, and the balance of the record. For the reasons set forth below, the Court **DENIES** Girard's motion for reconsideration and **GRANTS** WAP's motion to compel mediation.

## II.　BACKGROUND

The facts of this case are set out in detail in the September 4, 2024 report and recommendation (the "R&R") and the June 2, 2025 order (the "Order"). Dkts. # 173, 195.

ORDER – 1

Briefly, Girard operated a material recovery and recycling facility (the "Facility") on a property it leased from the City of Snoqualmie. Dkt. # 173 at 3. WAP sued Girard for various Clean Water Act ("CWA") violations. *Id.* at 2. On summary judgment, the Court adopted the R&R finding that Girard committed 1,334 discrete CWA violations. Dkt. # 178. In the intervening time, Girard shutdown its operations at the Facility, left the site, and terminated its permits. Dkt. # 181. It subsequently moved to dismiss for lack of jurisdiction, arguing that the shutdown of its operations rendered this case moot. *Id.* In the Order, the Court, in relevant part, converted Girard's motion to one for summary judgment, [1] and denied the motion because there is a material dispute as to whether Girard is committing ongoing CWA violations, and because it is not "absolutely clear" that the alleged violation could not reasonably be expected to recur. Dkt. # 195. Girard moved for reconsideration on the denial of its motion to dismiss. Dkt. # 200.

On September 29, 2025, the parties jointly moved to extend the trial date because they agreed to mediate this case on January 9, 2026. Dkt. # 206. The Court granted the request. Dkt. # 207. The parties agreed to mediate the case before mediator Mark Schneider of Washington Arbitration and Mediation Service. Dkt. # 216 ¶ 3. Shortly before the scheduled mediation, however, Girard cancelled the mediation. *Id.* ¶ 8. Girard's stated reasons for cancelling the mediation included that its motion for reconsideration was still pending, and WAP's initial demand was not reasonable. *Id.* WAP thereafter moved to compel mediation. Dkt. # 215.

### III. MOTION FOR RECONSIDERATION

Under Local Rule 7(h), motions for reconsideration are disfavored. Courts will ordinarily deny such motions in the absence of "manifest error in the prior ruling" or "new facts or legal authority which could not have been brought to [the court's] attention earlier with reasonable diligence." Local R. W.D. Wash. ("LCR") 7(h)(1). Manifest error is very

---

[1] For simplicity, the Court will continue referring to the motion at Dkt. # 181 as Girard's "motion to dismiss," although the Court converted it to a motion for summary judgment.

ORDER – 2

nearly synonymous with "clear error" under Ninth Circuit precedent. *School Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (explaining that "[r]econsideration is appropriate" if "the district court committed clear error or the initial decision was manifestly unjust").

Girard does not cite any new facts or legal authority, and thus premises its motion on the basis that the Order's findings were manifest error. Girard's motion for reconsideration fails to meet this high burden.

**A.      Mootness**

It was not manifest error to find that Girard's Facility closure does not moot this case because civil penalties remain available to deter future violations. Girard moved to dismiss this case under *Coastal Environmental Rights Foundation v. Naples Restaurant Group, LLC*, 158 F.4th 1052 (9th Cir. 2025).[2] In that case, the Ninth Circuit stated that "civil penalties remain available to deter future violations, unless it's absolutely clear that the alleged violation could not reasonably be expected to recur." *Id.* at 1063. Girard argued that because it shut down operations at the Facility, it is "absolutely clear" that the alleged violation could not reasonable be expected to recur, thus rendering the case moot. Dkt. # 181 at 2. In the Order, the Court found that although Girard closed the Facility, civil penalties may be available to deter future violations, including because Girard "also operates other facilities in Washington subject to NPDES[3] stormwater requirements." Dkt. # 195 at 23.[4] Thus, it is not "absolutely clear" that Girard's CWA violations could not recur. *Id.*

---

[2] The parties' motion to dismiss briefing cited to a prior version of the *Naples* opinion, which was recently withdrawn and replaced by the opinion cited above.

[3] "NPDES" refers to the National Pollutant Discharge Elimination System.

[4] Although not explicitly discussed in the Order, there is also evidence in the record that Girard intends to reopen the same slurry processing facility when it finds a new location for the facility. *See* Dkt. # 186-1 at 6 ("Q. Is Girard looking for a new site? . . . [A.] we are looking because, you know, it's an important part of what we do, or was, and what the building industry needs.").

ORDER – 3

The Court begins by noting that a defendant claiming mootness based on actions taken after the commencement of litigation bears a "formidable burden." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). Significantly, "the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing" if the defendant stopped the wrongful conduct *before* litigation, "but not too speculative to overcome mootness" if the defendant stopped the wrongful conduct *during* litigation. *Id.* Indeed, *Laidlaw* itself made clear that closing a polluting facility after the start of litigation does not necessarily render the case moot. *Id.* at 193 (finding the effect of defendant's "facility closure on the prospect of future violations is a disputed factual matter.").

The Order's findings are consistent with existing authority. Specifically, although *San Francisco BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153 (9th Cir. 2002) involved the sale of a polluting facility, rather than the closure of that facility, its emphasis on deterrence is applicable. In *Tosco,* the Ninth Circuit found that "[a]llowing polluters to escape liability for civil penalties for their past violations by selling their polluting assets would undermine the enforcement mechanisms established by the Clean Water Act." *Id.* at 1160. It remarked that "[w]ere we to find this case against Tosco moot, not only would Tosco be able to escape the consequences of its pollution, but any subsequent owner could continue the illegal pollution, confident in its ability to escape any potential monetary sanctions by re-selling the Diablo facility in its turn." *Id.* Indeed, *Tosco* demonstrates the breadth of what courts may consider when evaluating the potential for deterrence, finding that even the deterrence effect on someone other than the defendant may be considered. In addition, in *Wild Fish Conservancy v. Cooke Aquaculture Pacific LLC*, No. 17-1708, 2019 WL 6310660 (W.D. Wash. Nov. 25, 2019), the court found that although defendant's facility was permanently closed, "civil penalties still serve to deter future Clean Water Act violations" because "Defendant continues its operations in Puget Sound." *Id.*, at *13.

ORDER – 4

Thus, civil penalties are available to deter a defendant that closes the polluting facility at issue but operates other similar facilities. [5]

Together, *Laidlaw*, *Tosco*, and *Cooke* counsel that although Girard closed its operations at the Facility, civil penalties remain available to deter future violations, including at Girard's other facilities, in the event Girard reopens the same operation, or in the event Girard sells its operation to another buyer. As noted above, what may be too speculative to establish standing at the start of a case is "not too speculative to overcome mootness" at this procedural posture. *See Laidlaw*, 528 U.S. at 190.

Girard's arguments to the contrary fall short of demonstrating manifest error. First, Girard argues the Court erred by considering the "nature of Girard's former operations" in distinguishing this case from *Naples.* Dkt. # 200 at 3. In *Naples*, however, the defendant's past conduct was a component of the Ninth Circuit's conclusion that the defendant was not likely to violate its permit requirement again. The court considered that the defendant had "a demonstrated record of complying with it regulatory requirements," "applied for a general NPDES permit to cover its annual fireworks show as soon as the Board started issuing them," and obtained the permit to "comply with its Clean Water Act obligations" rather than to "moot this case." *Naples*, 158 F.4th at 1060. Based on this past conduct, and the fact that the defendant completely remedied its CWA violation, the court found civil penalties were "moot because they no longer have a deterrent effect." *Id.* at 1064. The same is not true here. The Court found that Girard has an extensive history of over 1,300 discrete violations. Dkt. # 178. It was not manifest error to consider this finding in distinguishing this case from *Naples*. Unlike in *Naples*, deterrence remains a viable consideration in this case for the reasons stated in the Order and above.

---

[5] Girard's motion for reconsideration argues *Cooke* is distinguishable in part because the defendant "still owned and had control of the facility" and "could rebuild the facility." Dkt. # 200 at 6. The *Cooke* opinion plainly states, however, that "it seems clear that [the subject facility] is permanently closed." 2019 WL 6310660, at *13.

ORDER – 5

Second, Girard argues that its two operating sites are subject to a different kind of NPDES permit than the one used at the Facility, and therefore it was improper to consider the other two sites when evaluating the possible deterrent effect of civil penalties. Dkt. # 200 at 4–5. As WAP points out, however, the other two sites are still "covered by NPDES permits authorizing the discharge of stormwater associated with industrial activities," some of the same employees at the Facility are involved in the other sites, and there have been documented violations at the other sites. Dkt. # 202 at 9. Girard cites no cases stating that to have deterrent effect, the defendant's other similar facilities must be operating under the exact same type of NPDES permit. As noted above, case law suggests that Girard carries a "formidable burden" to show mootness, and the scope of what courts may consider when evaluating the potential for deterrence is broad. *Laidlaw*, 528 U.S. at 190; *see Tosco*, 309 F.3d at 1160. Although in *Cooke*, the defendant's other sites were operating under "identical permits," 2019 WL 6310660, at *13, that does not mean identical permits is a prerequisite for civil penalties to have a deterrent effect.

Third, Girard argues that *Tosco* and *Cooke* are distinguishable. For the reasons discussed above, the Court disagrees. In sum, the Court does not find the Order's mootness analysis was manifest error.

**B.    Continuing Violations**

Girard also fails to show the Court's finding regarding ongoing CWA violations was manifest error. The Court found "there is a material factual dispute as to whether [Girard] is committing ongoing CWA violations via stormwater discharges from areas at the Facility where [Girard] previously conducted industrial activity and left significant materials behind." Dkt. # 195 at 18.

In its motion for reconsideration, Girard does not dispute the Court's findings that (1) there is a material factual dispute regarding whether there are continuing stormwater discharges associated with Girard's previous industrial activity and significant materials left behind at the Facility; and (2) such discharges may give rise to ongoing CWA liability.

ORDER – 6

Instead, Girard argues if there are continuing discharges, the City of Snoqualmie is liable because it now owns the property.  Dkt. # 200 at 7.  Girard, however, cites no case for the proposition that an entity whose previous industrial activities are the root cause of ongoing CWA violations cannot be held liable because it no longer leases the site.  As the Court previously stated, "dischargers are not insulated from liability merely because they make illegal discharges via a system owned and operated by other entities." *San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 771 (N.D. Cal. 2011).  Girard's attempt to distinguish *West Bay* is unpersuasive.  It argues that in *West Bay*, there was "no question" that the defendant was engaged in ongoing CWA violations.  Dkt. # 200 at 8. However, a material dispute of fact as to ongoing CWA violations—which the Court found in its Order and Girard does not contest in its motion for reconsideration—is all that is required to deny Girard's motion to dismiss.

For these reasons, the Court finds its Order did not contain manifest error, and denies Girard's motion for reconsideration.

### IV.  MOTION TO COMPEL MEDIATION

"[T]he use of alternative dispute resolution procedures promotes timely and affordable justice while reducing calendar congestion." LCR 39.1(a)(1).  "The court has the authority to require mediation, even over a party's objection, where doing so would yield significant benefits." *Jones v. Bank of Am., N.A.*, No. 14-cv-836, 2015 WL 11661769, at *2 (W.D. Wash. Apr. 2, 2015); *see* LCR 39.1 (a)(4).

The Court finds that mediation will be beneficial to the parties.  Many of the legal disputes in this case have been resolved, and the primary issue left for resolution is remedies.  Mediation may assist the parties in reaching an efficient resolution on the few remaining aspects of this case.  Litigation and trial, on the other hand, will be time-consuming and expensive.  Moreover, one of Girard's objections to mediation—that the Court has not yet to rule its motion for reconsideration—is no longer a barrier.  Further, although Girard argues WAP's opening settlement position was unreasonable, the Court

ORDER – 7

has no reason to doubt WAP's representation that it "commits to negotiating in good faith." Dkt. # 215 at 5. In all, the Court finds that mediation may yield significant benefits and will conserve the parties' and the Court's resources.

### V.   CONCLUSION

For the forgoing reasons, the Court **DENIES** Girard's motion for reconsideration, Dkt. # 200, and **GRANTS** WAP's motion to compel mediation, Dkt. # 215. The parties are **ORDERED** to participate in mediation with Mark Schneider of Washington Arbitration & Mediation Service in good faith by no later than March 20, 2026. If Mr. Schneider is unavailable in that timeframe, the parties shall confer in good faith regarding next steps for mediation and may, if necessary, file a motion to continue the trial date and/or for the Court to appoint a mediator or settlement judge.

Dated this 11th day of February, 2026.

The Honorable Richard A. Jones
United States District Judge

ORDER – 8